UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| MILES HALL, | CASE NO. 08 CV 1195 JLS (WVG) |
|---|---|
| Plaintiff, | **ORDER: (1) GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; (2) REQUESTING SUPPLEMENTAL BRIEFING** |
| vs. | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, et al., | (Doc. Nos. 63, 95.) |
| Defendant. | |

Presently before the Court is Defendants' motion for summary judgment or, in the alternative, partial summary judgment. (Doc. No. 63.) Also before the Court is Plaintiff's motion for partial summary judgment. (Doc. No. 95.) For the reasons stated below, the Court **GRANTS** Plaintiff's motion for partial summary judgment of the first cause of action for declaratory relief. In light of this declaratory judgment, the Court orders **SUPPLEMENTAL BRIEFING** as to Defendants' motion for summary judgment, as set forth below.

### BACKGROUND[1]

**I.  Factual Background**

This action arises out of a dispute regarding distribution of benefits payable for accidental death under an occupational accident insurance policy, Policy No. TRK 9102718, sold to decedent

---

[1] The background is not in dispute unless otherwise noted.

Robert Hall by Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union"). The policy is a purported group policy which provides insurance benefits to members of participating organization, including United Truckers Association ("UTA"). UTA is characterized by Defendants as a trucking association. Defendant Associated Underwriters "(AUI") is allegedly UTA's policy "Administrator" or, according to Plaintiff, the managing general agent for National Union, marketing occupational accident insurance nationally and in California.

On February 15, 2006, Plaintiff's father, Robert Hall, applied for coverage under the occupational accident insurance policy with combined single limits of $1 million as an employee of Fred Williams Trucking Co.[2] (*See* Pl. NOL Ex. 10; Stineman Decl. ISO Def. MSJ, Ex. 3 (hereinafter "Application").) The Application provided for the insurance policy contained options for $300,000, $500,000 or $1 million in coverage, and Robert Hall selected the $1 million option (Option 1). (*Id.*) Further, Robert Hall identified his son, Plaintiff Miles Hall, as the sole beneficiary under the policy on the Application. (*Id.*) The benefits due under this selected option is a matter of dispute between the parties for which both parties seek declaratory judgment and is discussed at length below.

Robert Hall's Application was processed that same day, and a Certificate of Insurance was faxed back to the facsimile number provided on the Application. The Certificate sets forth the policy limitations upon Accidental Death and Dismemberment ("AD&D") as: "$250,000; $50,000 Lump Sum. Survivor Benefits of $2,000 monthly for 8 years and 4 months." (*See* Certificate). The Certificate also sets forth the medical expense coverage of $1 million with a $0 deductible, as well as other limitations not at issue. (*Id.*) No other documentation was sent to Robert Hall or the motor carrier. On March 5, 2007, the first premium on the policy was paid by Fred Williams on Robert Hall's behalf.

. On March 6, 2007, Robert Hall suffered a fatal truck accident while in the course of providing occupational services for Fred Williams Trucking Co. Subsequently, Plaintiff filed a timely claim for policy benefits. In response, National Union paid Plaintiff a Lump Sum

---

[2] Decedent had also applied for and obtained the same insurance policy on two prior occasions, in October 2005 and January 2006.

Accidental Death Benefit of $50,000 as beneficiary of the policy.³  National Union also began paying, and continues to pay, a $200,000 Survivor Benefit to Robert Hall's wife Phyllis Benjamin in monthly installments.  However, Plaintiff contends that he is entitled to all policy benefits and that he is entitled to $1 million in coverage under the policy.

**II.     Procedural Background**

Plaintiff initiated this action against National Union, UTA and AUI in San Diego Superior Court on June 2, 2008, and Defendant removed the action to federal court on July 3, 2008.  (Doc. No. 1.)  On April 13, 2009, this Court granted Plaintiff's motion for leave to file a First Amended Complaint.  (Doc. No. 23; *see also* Doc. No. 14.)  The operative First Amended Complaint ("FAC") alleges six causes of action: (1) Declaratory Relief; (2) Breach of Contract; (3) Breach of Duty of Good Faith and Fair Dealing; (4) Intentional Misrepresentation and Concealment; (5) Negligent Misrepresentation; and (6) Violation of California Business and Profession's Code § 17200, et seq.  (Doc. No. 27.)

On April 30, 2009, Defendants filed a Rule 12(b)(6) motion to dismiss the fourth, fifth, and sixth causes of action asserted in the FAC.  (Doc. No. 33.)  Plaintiff filed an opposition on July 16, 2009 and Defendants replied on July 23, 2009.  (Doc. Nos. 37, 39.)  The Court thereafter granted in part and denied in part Defendants' motion to dismiss on December 8, 2009.  (Doc. No. 51.)  The Court granted Defendants' motion to dismiss the fourth cause of action for intentional misrepresentation and concealment and fifth cause of action for negligent misrepresentation.  (*Id.*)  The Court denied the motion to dismiss the sixth cause of action for violation of California Business and Profession's Code § 17200 ("UCL").  (*Id.*)  The Court gave Plaintiff leave to amend the dismissed causes of action within 30 days of the Order.  (*Id.*)  Plaintiff did not file a second amended complaint.  Accordingly, the remaining causes of action are for declaratory relief, breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of California's Unfair Competition law.  All remaining causes of action are asserted against National Union only, except for the UCL claim which is also filed against AUI.  UTA is no longer a

---

³ Plaintiff requested that $12,573.60 of this lump sum be paid directly to the funeral home in April 2007.  Plaintiff was then paid the balance of $37,426.40.

defendant in the action. (*See id*.; *see also* Doc. No. 33.)

On April 16, 2010, Defendants filed the present motion for summary judgment or, in the alternative, partial summary judgment. (Doc. No. 63.) Three days later, on April 19, 2010, Plaintiff filed a motion for partial summary judgment. (Doc. No. 95.) Pursuant to the Court ordered briefing schedule, both parties filed their respective oppositions on June 7, 2010 (Doc. Nos. 130, 131) and their replies on June 14, 2010. (Doc. Nos. 137, 142.) Oral argument on both motions was heard on June 24, 2010 and the matter was thereafter taken under submission.

## LEGAL STANDARD

### I. Motion for Summary Judgment

Federal Rule of Civil Procedure 56 permits a court to grant summary judgment where (1) the moving party demonstrates the absence of a genuine issue of material fact and (2) entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material," for purposes of Rule 56, means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The movant can carry his burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. *Celotex*, 477 U.S. at 324. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256. When ruling on a summary judgment motion, the court must view all

inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.     Interpretation of Insurance Policies

The "[i]nterpretation of an insurance policy is a question of law and follows the general rules of contract interpretation." *TRB Invs., Inc. v. Fireman's Fund Ins. Co.*, 145 P.3d 472, 476 (Cal. 2006); *see also Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998). Construction of a policy is governed by state law. *Humboldt Bank v. Gulf Ins. Co.*, 323 F. Supp. 2d 1027, 1032 (N.D. Cal. 2004). Under California law, "words in an insurance policy are to be read in their plain and ordinary sense. Ambiguity cannot be based on a strained instead of reasonable interpretation of a policy's terms . . ." *McKee v. State Farm Fire & Cas. Co.*, 145 Cal. App. 3d 772, 776 (1983) (internal citations omitted). "[T]he burden of making coverage exceptions and limitations conspicuous, plain and clear rests with the insurer." *Haynes v. Farmers Ins. Exchange*, 89 P.3d 381, 385 (Cal. 2004).

## DISCUSSION

## I.     First Cause of Action for Declaratory Relief

Plaintiff's motion for partial summary judgment and Defendant's motion for summary judgment as to the first cause of action both seek a declaratory judgment as to the benefits payable under Robert Hall's occupational accident policy.[4] (*See* Doc. Nos. 63, 95.) Plaintiff contends that he is entitled to $1 million in benefits, whereas Defendants contend that Plaintiff is only entitled to the remaining sum of the $50,000 Lump Sum Death Benefit and that Robert Hall's wife is properly entitled to the $200,000 Survivor Benefit pursuant to the terms of the policy. Plaintiff contends in the FAC under his first cause of action for declaratory relief that, at the time of his death, Robert Hall was covered under a policy of temporary insurance with benefits of $1 million combined single limits and with no lesser limits of liability. (FAC ¶ 17.) The alleged temporary insurance relied upon is Robert Hall's Application. (*See id.* ¶ 10, Ex. 1.)

Defendants contend that the cause of action for declaratory relief fails as a matter of law

---

[4] Plaintiff's motion seeks only summary judgment of the first cause of action for declaratory relief. Defendants' motion seeks summary judgment of all causes of action remaining in the FAC after this Court's dismissal Order.

because there was no temporary insurance policy in effect at the time of Robert Hall's death as a matter of law. The Court agrees that no temporary insurance was in effect at the time of death, but disagrees that the first cause of action fails as a matter of law on this basis.

Under California law, an application for insurance coverage coupled with payment of the first premium creates a policy of temporary insurance protecting the insured given the reasonable expectation that he would be afforded immediate coverage. *See Smith v. Westland Life Ins. Co.*, 539 P.2d 433, 437-38 (Cal. 1975); *see also Ransom v. Penn. Mut. Life Ins. Co.*, 274 P.2d 633 (Cal. 1954). This temporary insurance, however, expires on the date the policy either issues or has been rejected. *See Ahern v. Dillenback*, 1 Cal. App. 4th 36, 48-49 (1991); *Rios v. Scottsdale Ins. Company*, 119 Cal. App. 4th 1020, 1026-27 (2004). Even ignoring Defendants' argument that the group policy for which Robert Hall was applying for coverage was already in effect and therefore there could be no temporary insurance as a matter of law,[5] there is no question that as of the date of his death, Robert Hall was enrolled and covered by the group policy at issue. Mr. Hall had not only been issued a Certificate confirming his coverage with an effective date of February 15, 2007, but the first premium due under the policy had been paid the day before his death. Thus, any allegations relying on the creation and existence of temporary insurance in the FAC fail as a matter of law.

However, the FAC's cause of action for declaratory relief does not rely solely on the existence of a temporary insurance policy as Defendant contends. The first cause of action also asserts that Plaintiff is entitled to $1 million in coverage because "[t]here was no conspicuous plain or clear statement of any lesser limit of liability or any reduction of benefits payable to Robert Hall's beneficiary ever communicated to Robert Hall prior to his death on March 6, 2007." (*Id.* ¶ 18.) To this point, the issue becomes whether the limitation as set forth in the group policy and/or the Certificate is enforceable.

Defendants contend that the Certificate and the Group Policy TRK 9102718 form the operative scope of policy coverage, citing *Solomon v. N. Am. Life and Casualty Ins. Co.*, 151 F.3d

---

[5] During discovery, Plaintiff admitted that Policy TRK 92102718 was in effect at the time of Robert Hall's death. (*See* Def. NOL Ex. 4 (Request for Admission and Answer No. 12 & No. 13)).

1132, 1135 (9th Cir. 1998). This proposition, however, only applies insofar as "there is no conflict or ambiguity between the certificate and the master policy." *See id.* at 1135; *see also Humphrey v. Equitable Life Assurance Soc'y of Am.*, 432 P.2d 746, 755 (Cal. 1967); *Cross v. Mutual Benefit Life Ins. Co.*, 219 Cal. Rptr. 305, 308-09 (Cal. Ct. App. 1985); *Williams v. Am. Casualty Co. of Reading, PA*, 491 P.2d 398, 402 n.3 (Cal. 1971). If there is such an ambiguity or conflict, the terms of the Certificate are binding on the insurer. *Humphrey*, 432 P.2d at 751; *see also Williams*, 491 P.2d at 402 n.2.

The California Supreme Court's analysis in *Humphrey* is instructive and highly applicable to this case. In *Humphrey*, the plaintiff brought an action to collect benefits she alleged were due under her late husband's policy of group insurance issued to his employer. *Id.* at 747. The issue was not whether plaintiff's husband was insured at the time of his death, but whether he was insured for $1,000 as a retired employee or for $14,000 as an employee in his first year of disability as defined by the policy. *Id.* The court found the plaintiff's construction of the certificate to afford $14,000 in coverage persuasive. Specifically, the court found that nothing in the certificate indicated the limits or forfeiture of his rights as the defendants asserted.[6] *Id.* at 749. Further, the court held that "[e]ven if there were some doubt about the matter, we would be compelled to hold, in view of the rule that any uncertainties in an insurance policy must be construed in favor of imposing liability . . . " the certificate provided the greater limit of liability. *Id.* (citing *Cal. Comp. & Fire Co. v. Industrial Acc. Com.*, 42 Cal. Rptr. 845 (Cal. Ct. App. 1965)).

After determining that the certificate provided the greater coverage limit under its interpretation, the *Humphrey* court went on to determine "whether the certificate affording Humphrey coverage will prevail over the provisions of the master policy, assuming arguendo that the latter document would defeat his rights to $14,000 in coverage." *Id.* at 750. The certificate in *Humphrey* provided that the certificate was not a part of the insurance contract, but merely evidence of the group policy. *Id.*; *see also* Cal. Ins. Code § 10207 ("The policy shall contain a provision that: . . . The policy, the application of the employer and the individual applications, if

---

[6] Specifically, the court noted that "[t]he retirement and disability subdivisions appears to be independent of one another, each setting forth separate circumstances under which termination of active work will not be deemed to constitute termination of employment." *Id.* at 749.

any, of the employees constitute the entire contract of insurance.")  Thus, the defendants argued that the provisions of the master policy should prevail.  The court rejected this argument.  Instead, the court noted:

> Section 10209 of the California Insurance Code requires a group policy of insurance to contain a provision that the insurer will issue to the employer for delivery to the insured employee an individual certificate setting forth a statement as to the insurance protection to which the employee is entitled.  The purpose of the section is to provide persons insured under group policies with information regarding the coverage afforded.  Obviously, only accurate information will satisfy the statutory requirement.  To hold that an incorrect description of coverage is adequate would thwart the legislative purpose.

Cal. Ins. Code. § 10209.  The court went on to state that it found "no persuasion in respondent's proposal that the certificate may misrepresent the insurance protection without redress so long as it refers the holder to the master policy[,]" as this would "merely set a trap for the insured." *Humphrey*, 432 P.2d at 750.

Further, the court stated that the insured is entitled to rely on the certificate insofar as it deals with what benefits the insured is entitled to and to whom those benefits are payable to.  *Id.*  The court further justified its holding that the certificate prevailed because this " is the only document which the employee sees or is given at any time and that the insurer, who drafts the instrument in language it selects, cannot thereafter complain that it does not express the intention of the parties." *Id.* at 751.

In this case, Plaintiff contends that the terms of the policy set forth in the Certificate is ambiguous, incomplete, and, more specifically, any limitations to coverage are not plain, clear and conspicuous.[7]  Accordingly, Plaintiff argues that the Certificate should be interpreted to assert a maximum limit of liability of $1 million in coverage.  The Court agrees.

It is well-established that, under California law, any ambiguities in an insurance policy are read in favor of the insured.  *See McKee v. State Farm Fire & Cas. Co.*, 193 Cal. Rptr. 745 (Cal. Ct. App. 1083); *see also Humphrey,* 432 P.2d at 749; *Williams*, 491 P.2d at 404.  Furthermore, California law has adopted the rule that any limitations or exclusions of coverage must be plain, clear and conspicuous in order to be enforceable.  *Haynes,* 89 P.3d at 385 (citing *Steven v. Fidelity*

---

[7] For purposes of this analysis, the Court assumes *arguendo* that Robert Hall did indeed receive the Certificate, though even this is in dispute.

*Ins. Co. of NY*, 377 P.2d 284 (Cal. 1962)); *see also Ponder v. Blue Cross of S. Cal.*, 193 Cal. Rptr. 632 (Cal. Ct. App. 1983). As explained by the California Supreme Court in *Haynes*:

> [T]o be enforceable, any provision that takes away or limits coverage reasonably expected by an insured must be "conspicuous, plain and clear." Thus any such limitation must be placed and printed so that it will attract the reader's attention. Such a provision also must be stated precisely and understandably in words that are part of the working vocabulary of the average layperson. The burden of making coverage exceptions and limitations conspicuous, plain and clear rests with the insurer.

*Haynes*, 89 P.3d at 385 (internal citations omitted). Furthermore, courts have applied the clear, plain and conspicuous doctrine set forth in *Steven* and again in *Haynes* to the information received by individual participants in a group policy, such as the Certificate. For example, in *Burdick v. Union Security Ins. Co.*, the court applied *Haynes* to a Schedule included in the Certificate of Insurance, finding that "[n]owhere is the reader put on alert that the benefits would likely be reduced drastically through the SSDI Offset provision" and therefore such provision is inconspicuous. 2009 WL 6541608, at *6-9 (C.D. Cal. Apr. 2, 2009). The court further elaborated that "[t]he language of the SSDI Offset provision is not 'bolded, italicized, enlarged, underlined, in different font, capitalized, boxed, set apart, or in any way distinguished' from the rest of the Certificate" nor was "Offset Amount" defined in the Certificate. *Id.* at *8 (citing *Haynes*, 89 P.3d at 387).

In *Russell v. Bankers Life Ins. Co.*, the employee was issued a certificate of insurance under the group disability policy provided by his employer and given a booklet purportedly describing the insurance plan, yet was never given a copy of the policy. 46 Cal. App. 3d 405, 409 (1975). The court first found that, given that appellant had not been given a copy of the policy, any exclusion or limitation contained in that policy "which the insured has never seen cannot possibly provide adequate notice, let alone the 'clear and plain notice' required by *Steven*." *Id.* at 413-14. Accordingly, the limitation as set forth in the policy could not "limit the obligation of the insured to perform." *Id.* at 414. Moreover, the court went on to find that the booklet that was given to the appellant "which briefly outlined the coverage under the policy" also failed to provide clear and plain notice of the limitation. *Id.* Accordingly, the court reversed the trial court's enforcement of the limitation at issue in that case. *Id.* at 421; *see also Fields v. Blue Shield of CA*, 163 Cal. App. 3d 570, 579, 582-83 (1985) (applying the *Stevens* doctrine to a brochure provided to the individual

1  participants in a group medical policy even though the insurance contract at issue was not a
2  contract of adhesion (citing *Jones v. Crown Life Ins. Co.*, 86 Cal. App. 3d 630 (1978) and *Ponder*
3  *v. Blue Cross of S. CA*, 145 Cal. App. 3d 709 (1983)).

4  After reviewing the Certificate—the only document received by Robert Hall—the Court
5  finds that the limitation relied on by Defendants to pay only $250,000 in benefits is not plain, clear
6  or conspicuous.

7  At the top of the one-page Certificate is information regarding the policyholder, the insured
8  member, the policy number, and other information not related to the specific terms of coverage.
9  The first box below this contains the words, in the upper left hand corner and small font,
10 "COVERAGE LIMIT." Then, in a larger font and in the center of the box is the coverage limit set
11 forth as: "$1,000,000 Combined Single Limit Occupational Accident Benefit." Directly below
12 this is, in small font, is the disclaimer: "Important notice. This is not a policy of workers
13 compensation insurance and does not relieve an employer of workers compensation coverage
14 obligations. For a detailed description of policy terms and conditions contact our office at 1-800-
15 716-2559." (*See* Certificate.)

16 In box below this there is the phrase, in small font, "DESCRIPTION: Coverage while
17 under dispatch." Underneath these category are the "maximum limit" for "AD&D," "Medical
18 Expense" and other categories. The "AD&D" limit reads: "$250,000; $50,000 Lump Sum.
19 Survivor Benefits of $2,000 Monthly for 8 Years and 4 months." The term AD&D is not defined
20 anywhere in the Certificate. The Medical Expense maximum limit reads: "$1,000,000 Medical;
21 104 Week Benefit Period." There is also a heading for "Non-Occupational Accident" which is
22 arguably under the same heading "Coverage while under dispatch," but is in a separate box. The
23 "maximum limit," if that term does indeed apply to the box which include "non-occupational
24 accident" heading, reads: "10,000 Accidental Death and Dismemberment. $5,000 Medical
25 Coverage. $0 Deductible."

26 Given the layout, the differences in font size, the prevalence of the $1,000,000 in coverage
27 language, and the lack of association between the boxes containing the "Coverage Limit," the
28 "Description: Coverage while under dispatch" and "Non-Occupational Accident," the Court finds

1  that the Certificate as a whole is ambiguous as to the terms of coverage afforded under the policy.[8]

2  Moreover, the specific language and limitation for "AD&D," which is the limit upon which

3  Defendants rely, is ambiguous. No where does the Certificate define "AD&D." Nor is there any

4  connection between the use of the term "AD&D" under "Coverage while under dispatch" with the

5  full term "Accidental Death and Dismemberment" under the "Non-Occupational Accident"

6  heading. That the definition of AD&D is found within the group policy does not suffice to

7  eliminate the ambiguity as to what AD&D stands for. *See Williams*, 491 P.2d at 402 n.2 ("Thus,

8  even if the master policy had contained a provision defining 'premium due date,' such provision

9  would not have sufficed to eliminate the ambiguity remaining in the terms of the individual

10 certificate, the policy which, as Humphrey recognizes, 'is the only document which the employee

11 sees.'" (citing *Humphrey*, 432 P.2d at 751)); *see also Haynes*, 89 P.3d at 390 ("Although the term

12 'permissive user' appears in the title of the endorsement containing the limitation, the term is

13 nowhere defined, neither in the policy nor the endorsement, for the average lay reader.") Nor is

14 "AD&D" a part of the working vocabulary of the average layperson and therefore is not plain,

15 clear and conspicuous. *See Haynes*, 89 P.3d at 385 ("Such a [limitation] provision also must be

16 stated precisely and understandably, in words that are part of the working vocabulary of the

17 average layperson.") Furthermore, a telephone number for where the insured can learn more about

18 the policy is insufficient. CITE.

19 Moreover, even if it is clear what AD&D stands for, the maximum limits in the event of

20 "AD&D" is ambiguous. The "maximum limit" reads only: $250,000; $50,000 Lump Sum.

21 Survivor Benefits of $2,000 Monthly for 8 years and 4 months." There is no indication as to who

22 receives the Lump Sum or who receives the Survivor Benefits, much less whether these benefits

23 would go to anyone other than the Named Beneficiary, and, if so, who is qualified to receive such

---

[8] Furthermore, California Insurance Code § 10320(d) provides: "No policy of accident and sickness insurance shall be delivered or issue for delivery to any person in this State unless: . . . (d) The style, arrangement and over-all appearance of the policy give no undue prominence to any portion of the text . . . the size of which shall be uniform and not less than 10-point with a lower case unspaced alphabet length not less than 120-point . . ." Cal. Ins. Code. § 10320(d).

benefits.[9] Accordingly, the Court finds that the Certificate, especially regarding the limitation for Accidental Death and Dismemberment, is not plain, clear and conspicuous under California law. Thus, the Certificate is to be read in favor of the insured and therefore entitles Robert Hall to a maximum coverage of $1 million.

However, a finding that the limitation provision is not clear, plain and conspicuous only renders the limitation unenforceable if the limitation contradicts the reasonable expectations of the insured. *See Burdick*, 2009 WL 6541608, at * 8 (citing *Haynes*, 89 P.3d at 385.) In determining the insured's reasonable expectations on summary judgment, the Court "assesses as a matter of law the reasonable expectations created by the language in the policy." *Id.* (citing *Jauregui v. Mid-Century Ins. Co.*, 3 Cal. Rptr. 21 (Cal. Ct. App. 1991)). It is not the Court's "role to speculate on the policyholder's abstract expectation, but rather to consider reasonable expectations defined by the insurer's policy language." *Haynes*, 89 P.3d at 392 (citing *Jauregui*, 3 Cal. Rptr. 21).

The Certificate at issue here creates a reasonable expectation that the named beneficiary in Robert Hall's Application would be entitled to a maximum $1 million in coverage under the policy for an "occupational accident," including one that resulted in death. The Certificate, in large font in the center of the Certificate, indicates that the coverage limit is "$1,000,000 Combined Single Limit Occupational Accident Benefit." There is no definition of "combined single limit" nor of "AD&D." As discussed above, there is no clear mention or explanation of any limitations which would apply, much less that these such limitations apply for accidents which result in death or dismemberment. Thus, the use of the term "AD&D" and the unclear break-down of the $250,000 maximum benefits under this heading "does not negate the reasonableness of believing that Plaintiff[] would receive that amount." *See Burdick*, 2009 WL 6541608, at * 9. Furthermore, the reasonable expectation of an insured would be that the benefits would be paid to its named beneficiary; in this case, Plaintiff Miles Hall. There is nothing in the Certificate mentioning or

---

[9] Moreover, the Certificate provides incomplete information. The policy itself covers accidental death benefits, survivor benefits, accidental dismemberment benefits, paralysis benefit, temporary total disability benefit, continuous total disability benefit, and accidental medical expenses. (*See* Def. NOL Ex. 2 at NUFIC 00304-00307.) But, the Certificate only provides description of coverage for AD&D, Medical Expenses, Medical Deductible (not a benefit), Temporary Disability and Permanent Disability. (*See* Certificate). Thus, even if all terms and limitations were unambiguous, the Certificate is still incomplete.

indicating that the benefits would be paid to anyone other than the named beneficiary. Thus, it is the reasonable expectation under the Certificate that Plaintiff Miles Hall would be paid $1 million in benefits under the policy in the event of an occupational accident by Robert Hall, including one which resulted in death.[10]

As such, the Court finds that the reasonable expectation created by the Certificate is $1 million in coverage and that the limitation provision within the Certificate—the only document provided to Robert Hall—is not clear, plain and conspicuous and is therefore unenforceable. Accordingly, reading the Certificate's ambiguities in the light most favorable to the insured, Robert Hall's sole named beneficiary Plaintiff Hall is entitled to $1 million in benefits under the policy which provides only for $250,000 in coverage, payable to both Plaintiff and Robert Hall's surviving wife. This creates an ambiguity or conflict with the language set forth in the group policy. Thus, according to the *Humphrey* court, the language of the Certificate prevails. *See Humphrey*, 432 P.2d at 751

Moreover, California Insurance Code §§ 10604 and 10605 requires that a properly completed disclosure form shall be delivered to a prospective insured and to the contract holder of a group disability insurance contract upon delivery of the group policy or contract. *See* Cal. Ins. Code §§ 10604, 10605(a)-(c). However, it is undisputed that only the Certificate was sent to Robert Hall and that, although a more detailed Description of Coverage form providing all

---

[10] Defendants' contention that any reasonable expectation of $1 million in coverage is defeated by the fact that Robert Hall applied for and received coverage under the same policy two prior times is irrelevant. (Def. Opp. to Pl. MSJ at 9 ("Each time, Robert Hall received a certificate of insurance identifying the respective tiered sub-limits of each coverage grant."); *see also* Def. NOL Ex. 2 at NUFIC 00360, NUFIC 357, NUFIC 347.) Initially, the Court is not to look at Robert Hall's "abstract expectation," but rather the expectation created by the Certificate. Furthermore, there is no evidence that Robert Hall was provided with any information other than the Certificate on these prior occasions, nor is there any evidence that Robert Hall came to learn about the benefits actually due in the event of death or dismemberment prior to his passing—the only time in the record when the limitation was enforced and the actual benefits due became known. Defendants further assert in defense that the main purpose of the occupational accident insurance is to provide coverage for medical expenses and disabilities incurred while on the job for independent contractors who do not have workers compensation coverage. Thus, the policy at issue in this case is not a typical life insurance policy but rather one that provided coverage of up to $1 million in medical expenses, not benefits upon death. (Def. Opp. to Pl. MSJ at 9.) As such, Defendants contend that Robert Hall should not have reasonably expected to receive $1 million upon death or dismemberment as a normal life insurance would provide. Again, this argument pertains to the abstract expectations of the insured, not the language within the Certificate which provides for $1 million in combined single limits in the evidence of an occupational accident, without clearly identifying any limitation in the event of an accident which results in death.

limitations was to be sent with the Certificate, this document was not so provided.  (*See* Pl. NOL Ex. 9 (Samarco Depo.) at 59-61, 93-95; Ex. 5 (Stineman Depo.) at 14; Ex. 22 (Stewart Depo.) at 27-28, 32-33.)  Instead, it was not the policy of National Union to send the Description of Coverage for all policies until after Robert Hall's death, in 2008.  The purpose of Sections 10604 and 10605 is to provide a thorough description of the coverage provided under the group policy to the individual participant for the participant's protection.  This Court will not allow a master policy to prevail over an inadequate Certificate, especially in light of a blatant violation of the California Insurance Code intended to protect the individual from inadequate information such as in this case.

For those reasons, the Court **HEREBY DECLARES** that Robert Hall is entitled to $1 million in coverage under his accidental occupation insurance policy at issue in this case.

**II.    Supplemental Briefing**

In light of this declaratory judgment, the Court hereby orders supplemental briefing on two issues: (1) whether genuine issues of fact remain for trial as to the second cause of action so as to defeat Defendants' motion for summary judgment of this cause of action; and (2) whether there is an adequate remedy at law, i.e. whether there is anything for this Court to enjoin, under Plaintiff's sixth cause of action for violation of California's Unfair Competition Law.

Each party **SHALL FILE** a supplemental brief addressing **ONLY** these two issues <u>on or before July 19, 2010.</u>  The brief shall be no longer than 10 pages.  Each party **SHALL FILE** a response in opposition <u>on or before July 26, 2010.</u>  The opposition brief shall be no longer than 5 pages.

**IT IS SO ORDERED.**

DATED:  July 1, 2010

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge